**Rommy REVSON, Plaintiff,**

v.

**CINQUE & CINQUE, P.C., Defendant.**

**No. 97 CIV. 9236(DC).**

United States District Court,
S.D. New York.

May 25, 1999.

Burstein & McPherson LLP by Judd Burstein, Laurie J. McPherson, New York City, for Plaintiff.

Cinque & Cinque, P.C. by Robert W. Cinque, James P. Cinque, New York City, for Defendant Pro Se.

### *MEMORANDUM & ORDER*

CHIN, District Judge.

This is a case that never should have been brought. A lawyer and his client had an excellent relationship. For almost five years Robert W. Cinque, Esq. and his firm, defendant Cinque & Cinque, P.C., provided legal services to plaintiff Rommy Revson. Ms. Revson became one of the firm's most important clients, and she was so pleased with the firm's services that at one point she presented Mr. Cinque with a Mercedes–Benz as a gift. Appropriately, he declined it.

Unfortunately, a disagreement thereafter arose over fees. The disagreement should have been resolved. But it was not—largely, I suspect, because Ms. Revson turned to her current counsel, Judd Burstein, Esq. Mr. Burstein engaged in what can only be described as "Rambo lawyering," as he repeatedly employed inappropriate tactics in an effort to intimidate and harass Mr. Cinque into resolving this matter on terms that Ms. Revson and Mr. Burstein himself found acceptable.

For example, Mr. Burstein:

• wrote a letter to Mr. Cinque immediately after the dispute arose threatening to "tarnish" his reputation:

> I am writing to you in one last effort to avoid litigation that will inevitably tarnish your reputation and, perhaps, reduce the size of your wallet....

> I apologize in advance for the harshness of this letter. I have no desire to fan the flames of an emotional dispute. Nor do I have the desire to conduct the legal equivalent of a proctology exam on your finances and billing practices. Yet, I will not hesitate to do so unless you begin to act in a responsible manner...
> [;]

• filed suit in this action just two days later, without making any further effort to resolve the dispute;

• submitted court documents that contained false statements, including statements that Ms. Revson and Cinque & Cinque had never entered into a written retainer agreement when in fact they had and that Mr. Cinque had refused to provide Ms. Revson with timesheets when in fact he had;

• accused Mr. Cinque and his firm of unethical conduct, fraud, extortion, and breach of fiduciary duties;

• apparently threatened to add claims against Cinque & Cinque for malpractice and RICO violations;

• subpoenaed all of Cinque & Cinque's banking records;

• apparently contacted several of Cinque & Cinque's other clients to tell them about this case;

• wrote a letter to Mr. Cinque on the eve of trial continuing to threaten him: "I promise you that you will regret subjecting yourself to a public trial in which your conduct will be subject to scrutiny which I do not believe it can withstand"; and

• engaged in unfair and misleading tactics at trial, including, for example, cross-examining Mr. Cinque by suggesting that he had been criticized by the late Judge MacMahon of this Court, when Mr. Burstein knew that Judge MacMahon's decision was issued nearly thirty years ago when Mr. Cinque was a first-year associate fresh out of law school who had little, if any, part in the actions that were the subject of the criticism.

Nor, of course, is Mr. Burstein solely responsible for these actions. Ms. Revson apparently was aware of, and approved, Mr. Burstein's actions. She signed an affidavit that contained certain baseless allegations. She gave testimony at trial that the Court is convinced was false.[1]

The case has now been tried and all of the allegations made by Ms. Revson and Mr. Burstein against Mr. Cinque and Cinque & Cinque have been resoundingly rejected by the jury. After what Mr. Burstein has described in a letter to the Court as "an extraordinarily fair jury trial," the jury has found that Ms. Revson discharged Cinque & Cinque "without cause," that Cinque & Cinque did not breach its fiduciary duties to Ms. Revson, and that Cinque & Cinque is entitled to recover $670,000 in fees from Ms. Revson. The jury concluded that Cinque & Cinque performed extraordinary work for Ms. Revson, for it determined that the fair and reasonable value of the services provided by Cinque & Cinque was more than four times what the fees would have been at the firm's usual hourly rates.

The "Rambo" tactics used by Ms. Revson and her attorney have failed.[2] Nonetheless, the Court is deeply concerned about the tactics employed. First, the conduct was simply wrong.[3] Second, the

---

1. For example, Ms. Revson testified at trial that Mr. Cinque had called her a "greedy bitch" in a telephone conversation on December 11, 1997. (Tr. 75). In descriptions of the conversation in the pleadings, her affidavit, and her deposition, however, Ms. Revson never contended that Mr. Cinque had uttered those words. Rather, she contended only that Mr. Cinque had said she was "being greedy." (Tr. 76–77).

2. There is a lesson to be learned. As one commentator wrote in suggesting ways to address the lack of civility in the practice of law: "Every time that you make uncivil lawyers lose, you score a big victory for civility. Every time an abrasive, abusive, hostile, harassing, combative, discourteous, hardball, win-at-all costs, take no prisoners, scorched earth, Rambo lawyer loses, it's a great day for civility." Robert C. Josefsberg, *The Topic Is Civility; You Got a Problem With That?*, 59 Or. St. B. Bull. 19, 23 (Jan.1999).

3. *See, e.g.,* Bruce A. Green, *The Ten Most Common Ethical Violations*, 24 No. 4 Litig. 48, 48 (1998) (noting that "[l]eaders of the organized bar now see [incivility] as the most worrisome ethical problem"). ABA President Jerome J. Shestack has urged lawyers to "resist the rise of Rambo-type tactics in which civility is mocked and ruckus is routine." *Id.;*

conduct apparently was intended to, and did, hurt Mr. Cinque and Cinque & Cinque.[4] Third, the conduct undoubtedly multiplied these proceedings. Although the case has now been tried and the Court is reluctant to prolong this matter, the Court has the duty and responsibility to address these concerns.[5]

The Court concludes that a substantial likelihood exists that Ms. Revson and Mr. Burstein engaged in vexatious and unreasonable conduct in these proceedings. Accordingly, plaintiff Rommy Revson and her attorney Judd Burstein, Esq., are hereby ORDERED TO SHOW CAUSE why sanctions should not be imposed against either or both of them pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent power and against Mr. Burstein pursuant to 28 U.S.C. § 1927. The parties are to proceed as follows:

1. Cinque & Cinque shall submit an affidavit no later than June 25, 1999, listing and summarizing any actions taken by Ms. Revson and her counsel in this case that Cinque & Cinque believes the Court should consider in determining whether to impose sanctions; any relevant documents shall be attached to the affidavit as exhibits; the firm may include in the affidavit a request for attorneys' fees and costs;

2. Ms. Revson and Mr. Burstein shall respond to Cinque & Cinque's affidavit and this order to show cause on or before July 19, 1999;

3. A hearing will be held on August 25, 1999 at 10:00 A.M. in Courtroom 11A at 500 Pearl Street.

SO ORDERED.

---

see also Gerald W. Heller, *Sanctioning Attorney Misconduct; Playing by the Rules*, 45 Fed. Law. 38, 38 (Jan.1998) (urging the use of Rule 11 and other sanctions to eliminate "Rambo-style tactics").

4. Mr. Cinque stated in his summation that "[e]very effort has been made to malign, slander and libel me" and that "Cinque & Cinque for the past year and a half … ha[s] been subjected to some of the worst claims of fraud you can imagine." (Tr. 738–39). In describing the damage done to his and his firm's reputation, Mr. Cinque explained that "[a]s lawyers, we don't have … an inventory. We have our integrity … [a]nd when someone challenges us as frauds, you don't even have to be a professional to realize that hurts. And they assaulted me in every way they could. They assaulted my brother, the firm, Cinque & Cinque. Denigrated us. Hurt us. And

they succeeded. They succeeded, I am frank to tell you." (Tr. 753–54)

5. *See, e.g.,* Jerome J. Shestack, *Advancing Professionalism Needs Judicial Help*, 84 A.B.A. J. 8 (Apr.1998) (discussing a judge's responsibility and authority to advance professionalism by refusing to tolerate Rambo tactics and incivility); Cornelius Wallis Honchar, *"Rambo" Litigators Can Be Disarmed With Sanctions*, Chi. Daily L. Bull., Nov. 4, 1994, at 5 (noting that "case law is developing to combat uncivil, unprofessional conduct"); Gideon Kanner, *Welcome Home Rambo; High–Minded Ethics and Low–Down Tactics in the Courts*, 25 Loy. L.A. L.Rev. 81, 82 (1991) (arguing that judges should take a more active role in policing misconduct and that judicial tolerance "is a substantial factor which lies at the root of the Rambo litigation phenomenon").